My name is Benjamin Saenz and I represent the petitioner in this review of the BIA's denial of his withholding of removal applications. I reserve two minutes for rebuttal. When the immigration judge issued his decision in April 2014, he determined that the petitioner's family membership would not be one central reason for the harm that he would face at the hands of the Zetas. He did not make a factual finding that the Zetas would not at all be motivated by the petitioner's family membership because such a finding would have been unnecessary to apply the one central reason standard. In 2017, the 9th Circuit issued Barajas-Romero, which clarified that the appropriate standard for nexus under withholding of removal is the A reason standard. Because the immigration judge never made a finding as to whether the Zetas would at all be motivated by the petitioner's family membership, the agency does not have the factual predicates necessary for it to conduct its legal analysis under the correct standard. Remand is required by the agency to the immigration judge to make the factual predicate findings to allow it to conduct its research or to conduct its analysis. The BIA cannot make findings of fact. It's a basic rule of appellate procedure that only the finding of fact can make these initial findings. The government now asserts without a basis in the record that the immigration judge did find that the Zetas were not at all motivated by family membership. The immigration judge did not make that finding. But even if it did, the BIA still applied a clear error review to the legal issue of nexus. The BIA's failure to apply the correct standard of review is an independent error that requires remand. So there's two reasons. Mr. Stein, here's my basic problem with the case. It seems to me that the BIA erred in the following sense. As I read the BIA, it says that this is just a dispute about land. This is not about, there is no sort of family social group that's involved here. That strikes me as wrong because we've got a lot of cases where the dispute with a particular individual is about on a non-protected ground. For example, we've got a case out of South Africa where the father or the patriarch in the family was a racist abuser. And as a consequence of that, his family members were being threatened and beaten up and so on. And we held that with respect to the family members, not with respect to the racist patriarch, but with respect to the family members, this was because of a family relationship. Well, yes, there's a land dispute and there's a land dispute with Edmund and his siblings. But the threat is not to, that we're worried about here is to the family members, not with Edmund. So I'm going to put that part of the BIA aside. My problem is how serious is the threat? Because while Edmund was beaten in the head and his foot was broken, and while the sister-in-law Marta was attacked and was beaten and her face was cut, there were threats that the cousins, that is to say the children of Marta, would be hurt. They never were. And there was a threat to Edmund that his family would be hurt, including, I guess, Petitioner, and he's never been hurt. So help me with respect to the seriousness of the threat. So, I mean, this court has held that for persecution that death threats can be sufficient, and there were death threats, especially when they're coupled with, you know, an immediate... Death threats to whom? Death threats to the Petitioner's family. To me, it seems like there's a generational divide here. It seems as if the threats were primarily directed toward those who had the immediate interest in the property, as opposed to the next generation. So where in the record can we go to look to see to whom the death threats were directed? To clarify, the only person with an immediate legal interest in the property is Petitioner's father, Edmund O. Cruz Rivera. Right, and if he were unable, and his siblings didn't have an interest in the property, a potential interest in the property? So just to illustrate exactly what... So the immigration judge found that Petitioner's aunt had a presumptive, colorable interest in the property, but she doesn't have a legal interest in the property. And the only reason for that presumption is the family membership. She doesn't, as a matter of fact, have an interest in the property, and so the reason that Zetas would target her is because of her family relationship. And it's the same with the Petitioner. So the Petitioner is similarly situated to the aunt, and that's the crucial failure in this case. Could you put me in the record where the death threats were? Sure. So there's letters from the Petitioner's father. Is that 254 to 257? And then a letter from the brother at 269 to 270, and then a letter from Martha at 271 to 273. But just going off... Was there any evidence in the record regarding death threats to the younger generation? Well, yeah, at 611, the Petitioner, in his affidavit before his asylum application declaration, said that the aunt's children were threatened. But I think that's what's blurring the issue here is because his cousins are not part of the particular social group, immediate family of Edmundo Cruz Rivera. And that's where this whole decision is convoluted, is that the harm should have focused on the immediate family members of Edmundo Cruz Rivera. With regards to the aunt, the only reason that she was threatened was because of her relationship to Edmundo Cruz Rivera. She has no legal interest in land. The Petitioner has no legal interest in land. Could I ask a clarification question? You keep saying that the aunt was threatened, but I thought the aunt was attacked. I thought they cut her. Is that wrong? Yeah, she was beaten and cut also. So she suffered. But the failure really, which messes up this whole analysis, is that the immigration judge needed to focus on why the past harm occurred to the aunt and why the future harm occurred to the Petitioner. With regards to the past harm to the aunt, the immigration judge did not find that family membership would not play a role. And that wouldn't make sense because the Petitioner's aunt has no interest in the land. And because they didn't analyze whether family membership would play any role whatsoever, the immigration judge failed to consider that the Petitioner and his aunt are the similarly situated family members and that there's a likelihood that the Petitioner would suffer the same harm as his aunt. And that failure to understand that complicates the whole analysis. The court doesn't even need to go into the reasoning because there's legal issues in the case that require remand under Ventura. But if the court were to go into reasoning, the decision can't be based on substantial evidence when there's a failure to consider whether family membership played any role whatsoever in the case. I'll reserve the rest of my time unless you have other questions. So don't worry about, we'll make sure you get enough time for rebuttals. I want to follow up on what you're saying. So the argument you just made, if I understand it correctly, is that the BIA made a mistake in saying this is only a dispute about land. This is not a family membership issue and they did not address family membership. As I think, in fact, family membership here is an issue. My problem is how serious is the threat to the Petitioner, not whether or not this is a family membership issue. So you're saying that we should send it back on a Ventura remand saying this is a family issue and therefore you should evaluate the threat, the seriousness of the threat? Yeah, I think that because the immigration judge didn't consider family membership would play any role, he only focused on the primary motives of the Zetas cartel, the record is incomplete for the agency to make a determination regarding withholding or removal. Counsel, how do we decide which members of the family, is it your argument that any member of the family was included within the particular social group? Because I think Mr. Esparza had left in 1994. So are you still saying that he was part of the family that was included? Yeah, part of the characteristics of a particular social group is that it's immutable. And Flores Rios recognized this. And that's exactly the issue is that he is always going to be the family of Edmundo Cruz Rivera. And it's only his relationship to Edmundo Cruz Rivera that's putting him in danger. So he's similarly situated to the aunt. And the harm that the aunt suffered was severe. She was beaten, she was cut, the threats were escalating. And without failing to consider that the aunt and the petitioner are the same family, particular social group, it's a failure to consider the harm that the petitioner would likely suffer if he was returning to Mexico. Can I just ask one quick follow-up question before you go? I agree that this is about family. It's not about a property dispute. And I totally understand that argument. I guess what I don't understand about what you're saying is that if we agree that the IJ slash BIA clearly erred in concluding that this was a property dispute instead of about family, that we would remand to assess the threat. I thought your argument was that the aunt is similarly situated to the petitioner. They're both closely related to the primary property owner. They already cut the aunt and beat her up. And so it should be obvious to us that if the primary property owner's son goes back to that town, he's in similar danger. So why would you advocate for a remand for that question? I mean, why wouldn't we just conclude that on this record, it's clear that he faces a threat of persecution? While I would like the court to be able to make that finding, I really don't think the agency has the factual predicates necessary to make the legal conclusion. I mean just to illustrate how much I believe this point is that I don't believe that there's enough evidence even to compel a grant. I think the immigration judge just didn't make the necessary factual findings in the first place. It may not be enough to compel a grant, but on this issue of the threat, I just – I don't – I guess I don't understand what more you need. I mean he's the son of the primary property owner. They beat up the primary property owner. They told the property owner that they were going to harm his family. They have in fact harmed his family, specifically his aunt, who's further removed from the primary property owner than the petitioner is. I mean why isn't that enough to establish – once you agree with you that it's about family, why is that not enough to establish a threat? I think that is enough, yeah, and I think that all the analysis regarding whether there's a sufficient likelihood of harm or – it's tainted by I.J.'s failure in the first instance to recognize that yes, the aunt and the petitioner are in the same particular social group and the aunt is even more attenuated. So the harm that she suffered, the beatings and – Can we as the appellate court make that finding? No, I think that it needs – I think this case needs to be remanded to the immigration judge. I think – so what happened in this case was that the government asked for remand based on Barajas-Romero, and they asked the court for remand so that they could clarify the issue of nexus or the potential mixed motive analysis. And because there was no finding regarding mixed motive analysis, I think it had to go back down to the immigration judge. And the Board of Immigration Appeals, rather than bringing it back down to the immigration judge, they just said, oh, we confirm based on this new standard, but they didn't have the factual predicate to make that finding. Now, you're saying they didn't have the factual predicate. Are you saying we should remand on an open record so that we get more evidence, or are you just saying they didn't make the finding? I think that this case should be remanded with instructions to remand to the IJ, the finder of fact, to analyze what role family membership played in this case. Right, but not on an open record. That is to say the record here is complete. You just want the IJ to make the finding based upon the record that we have? I mean, I think part of the record would be the IJ making the factual finding regarding whether – I see what you're saying. I've got one further question, and I realize we're taking you over, so we'll just talk as long as we need to, so don't worry about the time. We have a finding that he can relocate safely. What do we do with that? So, yeah, with regards to the terminal relocation analysis, well, again, it's a mixed question of fact and law, so it should have been – it also required the de novo standard. But even – so even that is affected by the failure to recognize the petitioner and his aunts are similarly situated because it's a two-prong analysis, right? And prong one, it's whether the petitioner could feasibly relocate or relocate to escape harm from the Zetas. And that analysis is flawed because it doesn't consider that he's in the same situation as the petitioner, if not more immediate, and that he would suffer the same harm as the petitioner because it's only based on the cousins. And that's prong one of MZMR. And the second prong is whether it would be reasonable for the petitioner to relocate. And the BIA's decision contains no analysis under prong two, no analysis of reasonableness. The government tries to say it doesn't incorporate the immigration judge's findings below. So that analysis is both legally flawed in that it contains no analysis under prong two of MZMR, but it's also the whole case cannot be based on substantial evidence when there's a failure to recognize that the petitioner and his aunt are part of the same social group. But, counsel, what does that have to do with the relocation issue? The relocation issue is specific to him. So regardless of what happens with the aunt, the relocation issue is the issue regarding him. And we have to decide whether or not there is substantial evidence to support that conclusion. So prong one, it's relevant, I believe, because in order to determine whether he can avoid because the finding that the BIA made was that the immigration judge would not track him down because they've shown no interest in the cousins. But that's a failure to consider who he's actually situated to is the aunt. So that's why it's relevant in prong one. And then in prong two, there's no analysis of whether it would be reasonable for him to be okay. The BIA did not incorporate any of the immigration judge's findings into this analysis. And if it had, the immigration judge didn't follow, like, the regulations that talk about reasonable relocation. It solely focused on his ability that he's been healthy in the United States. He's found work. It doesn't focus on the fact that he came to the United States at 15 years old. He's lived here 25 years. He has all his families here except for his parents who have been harmed. He testified he had nowhere else to go in Mexico. There's no individualized, like, relocation. There's no analysis regarding the reasonable relocation. Can I ask a quick question about that? And this may be a product of my lack of experience in these types of cases. But on this question, are we supposed to be reviewing the analysis of the immigration judge, which I see is about three sentences? Or are we supposed to be reviewing the analysis of the BIA on this question, which appears to be zero sentences? The BIA. I'm not supposed to be looking at this one paragraph that the IJ wrote and analyzing whether that is supportable on the question of whether it's reasonable to require him to relocate to a different part of Mexico? That's correct. Well, counsel, we can look to the IJ decision to inform us as to what the BIA's ruling was, if the BIA incorporates the IJ decision. Which I think it expressly incorporates, and I don't believe that they expressly incorporated it. Just to make life one step more complicated, was it within the scope of our remand to allow or ask the BIA to make any finding with respect to relocation? I concede that it was in the scope of remand. You concede that it was? Okay. Counsel, one final question from me. So do you challenge the fact that the land dispute was at least part of the reason that there was harm or threats? With regards to the petitioner, I do, since he doesn't even have an interest in land, which is the relevant inquiry. Weren't the Zetas motivated by trying to buy property that was owned by the family? The family analysis is that regardless of why the initial family member was targeted, the relevant factor for why his family members were targeted is because of their family relationship. My client has no interest in land. But if they didn't own the land, they wouldn't have been targeted. That's what they said in their application. That's why it's in the application that it was because the parents wouldn't sell the land. But even if the Zetas thought that my client owned the land, which is not in the record, that would only be because of his family membership. But when the judge refers to the application and says, presumably, he has a cultural interest in land, his presumption is family membership. Otherwise, he would not think that she had land. The Zetas would not think it. And there's no finding that the Zetas thought that I had land. There's some factual findings that the government asserts that I dispute. And one of them is that the Zetas believed that his aunt had land because the immigration judge didn't make that finding. Okay, why don't we hear from the government? We've taken you well over time, but we will give you a chance to respond. Okay, thank you. Thank you. Good morning. May it please the court? My name is Margo Nissen. Am I supposed to be seeing you on the screen? No, I'm calling in over the phone. Okay. And I'm going to suggest now, my sense is that it actually was not my connection that was causing this feedback. I'm wondering if it's Mr. Stein's. I'm going to request that Mr. Stein put his connection on mute while the other side is arguing. Yes, Judge, I've gone ahead and muted Mr. Stein, and I'll continue to try to manage the feedback as best as possible. It doesn't seem like it's coming from me, and it seems like it may be worse now with Ms. Nissen. But anyway, go ahead. Okay, go ahead, counsel. We start the clock, and you start over. Okay. Good morning. May it please the court? My name is Margo Nissen for the United States Attorney General. Your Honors, the record does not compel reversal of the agency's denial of withholding of removal or protection under the Convention Against Torture in this case. I will first address withholding of removal, which the agency properly denied based on the petitioner's failure to show that it was more likely than not that he would be persecuted because of his family in Mexico, and additionally based on his failure to show that he could not reasonably and safely relocate within Mexico upon his return. Now, first turning to the question of nexus. At the outset, the board did not err on remand in discerning no clear error in the immigration judge's motive finding. The question of nexus is a two-part inquiry. First, the agency must consider the underlying motive, which is a question of fact. Only if the immigration judge finds that there is multiple motives, it's a mixed motive analysis, do they then go to the legal question of whether the protected grounds would be a reason for the harm for withholding of removal. Here, the immigration judge's decision, it's clear that the immigration judge made an either-or finding. He said that the Zetas were not motivated based on family membership. Instead, they were motivated based on this land dispute. Now, that strikes me. I'm sorry for talking over you. That strikes me as wrong in the following sense. With respect to Edmund, the father, and possibly with respect to his siblings, and possibly even with respect to that generation, including Marta, although that one's a little iffy, that's a dispute about land. They want the land. But with respect to the other family members, of course it's motivated in one sense by the dispute about land, but the only reason that family members, including Petitioner, are being attacked is that they are family members and therefore are being used as leverage against Edmund. Now, we've got case law that says if you've got a dispute with one person on an unprotected ground, and then the family members are being attacked, the fact that it's an unprotected ground with respect to the initial family member doesn't mean when you go after the other family members it's not on account of a protected family membership. How do you respond to that? So, under Elias Zacharias, the Supreme Court held that the question of nexus requires a motive finding. Similarly, in Ayala, this court stated that it's not enough to have two characteristics that are shared by a group of people. Instead, the Petitioner must show that the harm was motivated by the protected ground. In this case, as the agency found, the fact that Petitioner's family members or he himself would be harmed does not show that the harm was motivated by the family membership. Let me interrupt you, but that strikes me as wrong under the reasoning that we have. I understand that the Zetas want the land. That's what kicked this all off. That's crystal clear. We know that. But the only reason the Zetas are coming after or have threatened the next generation is that they want leverage over the landowner. I mean, they're not going after Joe Jones, who's unrelated. They're going after the Petitioner because he is related. He has no ownership himself, so he has no power to control where the land goes by any action of his own. He's being attacked because he's a family member, and therefore the father, out of his family ties, at least according to the leverage the Zetas are seeking to exercise, would then comply with their demands. How do you respond to that? Well, I think it's critical in the Petitioner's opening brief. He cites the Fourth Circuit case law to make this point. He's arguing that but for his family membership, he wouldn't be targeted. And it's important to note that this is not the law of this circuit. The Ninth Circuit does not apply a but-for test. Instead, we must show that there's an independent motive based on the family. I think we could demonstrate this. If the interest in land dropped away, would the Zetas still be independently motivated to harm the family? For instance, if the father sold the land, would the Zetas still be going after the family? There's no evidence to show that. It's only the Petitioner argues this but-for analysis, again, which is not the current law in this circuit. So are you saying – oh, I'm sorry to talk over you. This is Vince Chabria. So what you're saying is that even if it's clear that they're going after the family and that we're not – that even if we say, look, there's no cartel on the face of this earth that would say, you know what? We're only just going to go after one generation. We're going to go after – we're not going to go after another generation in a family because we think we should limit ourselves to one generation. Any cartel would – if they truly intended to go after family, they're going to go after family. And presumably, the closer the family member is to the property owner, the more likely they are to go after that family member. But so if we conclude that, that the cartel was after the family, you're saying that because the reason that the cartel was after the family is because they wanted property means that there's no claim here? There's no fear of persecution? There's no motive finding for the family. That if there was evidence of persecution… … between generations or things like that, you're saying that even if they're motivated to go after the family, that because the reason they're going after the family is because they want property means that there's no claim here? It means that there's no – that the agency did not err in its nexus finding. If there's nothing independent about the family… So what would be a reason for going – what would be a reason for going after the family that would give him a claim? Again, I'm asking you to assume for the sake of argument that this cartel has decided that they want to threaten the family, not just – not parse how closely related a family member is to the property owner. I'm asking you to presume that for the sake of this question. What motivation for doing that would give rise to a claim here, if not the desire to get their property? For instance, if there was something about the family, if they had government ties or there was something distinct about the family that was motivating the Zetas' interest. I would point, of course, attention to Aldana Ramos as an example. This is a First Circuit decision. In this case, the Zetas kidnapped the father and asked for a ransom from the family members. The family members paid the ransom, and the Zetas actually then killed the father, but then continued to threaten the family, the other family members, after the father had been murdered. In this case, they showed that there was something else about the family specifically that was motivating the Zetas or the gang members in that case. It wasn't just a but-for analysis that the petitioner is arguing here. Counsel, can we get back to the facts of this case? What evidence is there in the record that the petitioner and the cousins were threatened with harm? On page 611 of the record in the petitioner's declaration, he indicates that after his aunt was attacked, the Zetas said that his cousins could be next. However, those threats were unfulfilled, and there's no evidence in the record that shows that the petitioner was ever directly threatened with harm. I think that that's important. The question of nexus and the question of clear probability of harm are two distinct bases here. As the agency found, the fact that the similarly situated family members were not harmed undercut the petitioner's ability to show that he would more likely than not be harmed. For withholding of removal, it's a higher standard of showing the probability of future harm. And you say – oh, I'm sorry. You say that the aunt is not similarly situated to the petitioner and the cousins because she had a more direct interest in the land? Is that what you're saying? So you're saying in the IJ, it was saying that the cartel was parsing out the degree of interest that family members had in this land to decide who to target and who not to target? Well, I think, again, the immigration judge had to decide whether the petitioner has met his burden of showing whether he would more likely than not be harmed, be persecuted. In doing that, the immigration judge looked at the cousins as similarly situated to the petitioner and said they have not been harmed. The threats against them have been unfulfilled. That undercuts the petitioner's claim. Sorry, Judge Fletcher. No, no. Please go ahead, Judge Shabir. I was just going to say, but it's based on this seemingly made-up distinction between the degree of interest that somebody has in the property. And I'm looking at the IJ's ruling, and the IJ says the two people harmed by the cartel have a relatively direct interest in the land compared to Respondent. Respondent's father inherited a direct share of the land, and the Respondent's aunt presumably had a colorable interest in the land through her husband's share. Now, I take it that what the IJ is saying is that the cartel must have concluded that the aunt's share is somehow stronger or the aunt's interest in the land is somehow stronger than the petitioner or the cousins or whatever, so they decided to go after her. What support is there in the record for that? Where does that come from? I mean the cartel didn't go to the aunt and say we're targeting you because you have an interest in this land. We're cutting you because you have an interest in this land, did they? When they attacked her, they said that they were doing so because they wanted her husband and brother-in-law to sell the land.  As the petitioner – They didn't say we want you to sell the land. They said tell your husband and brother-in-law to sell the land. I mean what's the difference between that and going to the primary property owner's eldest son and saying tell your father to sell the land? This distinction that the IJ – I mean it seems to be totally made up, and I just don't understand how a cartel would possibly be drawing distinctions between generations or degree of property ownership or property interest in deciding which family member to threaten to try to get a piece of land that they want. Well I think for the question of clear probability, the immigration judge again was looking at the evidence in front of him and saying that, again, clear probability is a very high standard, a more likely than not standard. This court in Zahidi indicated that when considering this question, a key aspect is whether the petitioner himself has ever been directly harmed. In this case, the petitioner has never experienced any past harm, and he testified that there were no direct threats against him. And so I think what the immigration judge was saying was let's look at everyone who's been harmed. It's clear that the Zahidas were motivated based on their land interest in going after people who they thought that they could most directly get the land from. And other family members, for instance, other family members who were unrelated to the land had not been harmed. And I think that the immigration judge was looking at all that evidence to determine whether the petitioner had met his high burden. Do we have any evidence in the record with respect to siblings of the petitioner, where they are, whether they've been threatened, and so on? The petitioner testified that his siblings are all in the United States, and so there's been no threats against them. Again, the only people he testified to were friends. Well, there might have been threats against them because it was threats to family members. So there were threats against them, but they're all in the United States. And so far as the record shows them, there's no harm been inflicted. Mm-hmm. Yeah. And there was the... Counselor, does the record reflect that there were threats to all family members? The Zetas, when they made phone threats, they said that if the uncle and father did not sell the harm, more serious things could happen to the family. However, they didn't point out specific family members. And again, the petitioner said in his declaration that they said to the aunt that the cousins could be next. Again, these were all indirect threats. No one else in the family was directly threatened. Okay. Counselor, could you address the... Briefly. Excuse me, can you say, pardon me, as you cut out... Could you address the relocation issue? Of course. So turning to relocation, the record does not compel reversal of this issue either. As the agency found, the petitioner could safely relocate within Mexico. The country condition evidence shows, and the petitioner in fact testified on page 201 of the record, that the Zetas only are in about half of the states in Mexico. They only have control about over half of the states, about half of the states in Mexico. The CRS record indicates or report indicates that 80% of the violence connected to drug trafficking is concentrated to just under 7% of the municipalities in Mexico. In addition, as the immigration judge found, the petitioner's claim that a police officer would work with the Zetas to track him down is speculative. The record shows that the Zetas have never tried to track down any other family members in any other towns, or even family members who live in the same town, such as his cousins. In addition, the petitioner... Could I ask you just a real quick... This is Judge Chabria again. Could I ask you just a real quick question, the same question I asked of Mr. Stein? Am I supposed to be looking at the one paragraph in the immigration... I'm most interested in the second part of that test, right, whether it's reasonable to require somebody to locate to a different part of the country. And do I look at the one paragraph that the IJ wrote about that, or what the BIA said about that, or both? What am I supposed to be reviewing? So in Gonzales, which we cited in our brief, the court looks at the immigration judge's decision to the extent that it informs the board's decision. And in the board's 2018 decision, it indicated that it affirmed the immigration judge's relocation finding. And so the court can look at the immigration judge's decision to the extent that he considered relocation. Thank you. Notably, the petitioner, in his opening brief, waived any challenge to the reasonableness prong of the relocation finding. Okay. Again, we've taken you well over. Would you mind if I just ask one more quick question? No, no. As long as we've got questions, let's keep going. Please go ahead, Mr. Chairman. Sorry about that. Again, this is a relatively new area of the law for me by comparison, I think. The one other question I had, I guess, is on this relocation issue and on the reasonableness prong, the second part of the test. You know, I'm looking at this paragraph written by the IJ, and I'm comparing it to the regulation which instructs the adjudicator, the immigration judge, to consider a variety of factors in deciding whether it's reasonable to require somebody to relocate. And at least at first glance, it seems like the immigration judge only considered a very small portion of the or a small number of the factors that the judges are directed by that regulation to consider when conducting this analysis. And I was sort of analogizing this case to like a social security case where we judges are reviewing the decision by the administrative law judge. And that's an area I have more familiarity with, and you can correct me if you think the comparison is inapt. But in a social security case, if we were reviewing this analysis by, you know, the judge, the ALJ, we would say, well, this is clearly inadequate in that the ALJ did not appear to consider the vast majority of the factors they are supposed to consider when conducting an analysis like this. Is that a problem for you in this case? Well, again, the petitioner waived any challenge to this aspect of the immigration judge's decision, I'd say, first off. And I think that the immigration judge did consider a certain number of important factors, including the petitioner's age and his health. And I think a big part of this was the petitioner testified that when he first went to the United States, he was able, despite not knowing the language, despite not having skills, he was able to build skills and make his way in the United States. But you just told Judge Fletcher that – you told Judge Fletcher that all his siblings are in the United States, right? And his wife is in the United States. Is that right? A DACA recipient? And his two children are in the United States. That's correct. His two children, how old are they? I do not have – Like 8 and 10 or something like that? Yes, elementary school age. And he doesn't – so he has all these family ties in the United States and presumably social ties in the United States. He has some family in the town where the land is, where we will assume for the sake of argument he can't go back there. So he would be asked to go relocate to some other part of Mexico where he doesn't have any social connections as far as we know. Or maybe he does, and it's just not in the IJ's ruling. I don't know. But did the IJ analyze any of that stuff as part of the question whether it's reasonable to require him to relocate? I think that it's – the immigration judge did not specifically consider that. I think it's – I think that the immigration judge – Kelsey, if that issue had been raised to the BIA, the BIA could have remanded the matter back to the IJ to make those findings. But was that argument made to the BIA? It was – again, he – the petitioner waived it before this court, so it's not before this court at this time. But was it before the BIA? Were these specific matters that Judge Shabria is raising, were those raised by the petitioner before the BIA? I would have to – I will look. I'm guessing the answer is no because it wasn't part of the remand, right? It was – it was never – it was – well, before the – before did not address relocation in its first decision. And so – Right. And in the second decision, it wasn't part of the remand. So to the extent there was occasion to present – there would have otherwise been occasion to present something to the BIA on that, I assume nobody would have thought of it because it wasn't part of the remand, right? But it could have – the question whether the petitioner raised it in his initial – in his initial brief to the board because that's what the board on remand was looking at. Yeah, yeah. Relocation as a part of the initial matter. Yeah. This is Judge Fletcher. We can go back and look at the briefing to the board the first time around and we can – we can – I understand that you don't know the answer right off the top of your head. And we can – we can investigate and figure that one out for ourselves. Okay. If there are no further questions from the bench, thank you very much. Thank you. We've taken both sides over. And Mr. Stein, would we put – let's put two minutes on the clock for rebuttal. Okay. So the answer is yes, it was waived – reasonable relocation was raised to the BIA. It's at AR-61. I'm saying he has no choice but to live with his parents. With regards to whether we raised – Shabrier was making about all of the factors that should be considered. Were those factors raised in the briefing to the board? It was enough, I think, to put the board on notice that they had erred in – with respect to internal relocation. I'm asking about the specific factors that Judge Shabrier was saying should have been considered. Were those specifically raised? I – they were – I don't know. I'd have to get back to you. But with regards to whether we're waiting for the Ninth Circuit, the respondent brought it up in their brief. I think that should – But, counsel, we have case authority that says simply mentioning an issue without – fleshing it out with case authority and argument is not enough to preserve the issue. It's incumbent on the board to make sure it applies its own regulations correctly. I'm talking about before us. If an issue is in an opening brief, it has to be fleshed out with case authority, statutory authority, or regulatory authority, some kind of analysis before it's considered preserved on appeal. So it wasn't raised by the petitioner. The respondent brought it up in their brief. Then with regards to family – with regards to family, Flores-Virios is the case of the Ninth Circuit. But the big issue, though, in this case is that there was no motive finding to whether the petitioner's family would play a role in the harm the petitioner would suffer and the harm that the petitioner's aunt suffered in the past. It's reasonable that the immigration judge didn't make this finding because Barajas-Romero had not existed yet. But in the absence of this finding, the agency just doesn't have the facts necessary. It influences every aspect of the decision, and remand is required to the immigration judge. The agency has shown they're not going to remand the immigration judge unless there's instructions to do so. When they asked for remand before to clarify the issue of mixed motive, they did not. And the BIA cannot make that mixed motive finding. It has to go back down to the immigration judge. Counsel, if we agree with you, how would the remand read? It would read, remand to the BIA with specific instructions to remand to the immigration judge to make findings whether the Zetas would be at all motivated to harm the petitioner by his family membership or a protected ground. Because the immigration judge took great pains to say, I am only analyzing the primary motive, one central reason. The entire analysis in 153 to 154 is where he's talking, he says, he prefers to on account of one central reason. He makes clear he's analyzing the primary motive. He needs, in order to apply the withholding of removal standard as is required by Barajas-Romero, it is necessary that there's a mixed motive actual finding. And without that finding, the whole analysis is incomplete. Okay, good. Further questions from the bench? I think we've thoroughly explored this one. Thank you very much for both sides for very good arguments on both sides. The case is now submitted for decision. And we've got one more case on the calendar this morning. Thank you.
judges: W. Fletcher, Rawlinson, Chhabria